UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | | |
|---|---|---|
| CAROLINE D. STEVENS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2: 10-20-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| DONALD SAELINGER, M.D., et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of the Motion for Summary Judgment filed by Defendant Donald Saelinger, M.D. [Record No. 41] and Plaintiff Caroline D. Stevens' Motion for Partial Summary Judgment Against Dr. Saelinger [Record No. 60]. Saelinger seeks summary judgment on Stevens' claims of sexual harassment, fraud, retaliatory discharge, intentional infliction of emotional distress, and gender discrimination, while Stevens maintains that she is entitled to summary judgment on her fraud claim. For the reasons explained below, the Court will grant Saelinger's motion and deny the relief sought by Steven.

**I.    BACKGROUND**

Stevens is a registered nurse who was previously employed by Defendants Saint Elizabeth Medical Center, Inc. ("SEMC"), Physician Associates, LLC ("PAL"), and Patient First Physician Group ("Patient First"). During her employment, she worked for Defendant Saelinger, both as a nurse and as his personal assistant. This case arises out of the intimate relationship that developed between Stevens and Saelinger while they worked together. The details of that

relationship, related at length in both the Complaint and Stevens' response to the summary judgment motion, are largely irrelevant here. The salient undisputed facts can be summarized as follows.

Stevens and Saelinger became romantically and sexually involved in mid-2007. Saelinger was married at the time. Other Patient First employees were aware of the relationship; according to Stevens, "[i]t wasn't a secret." [Record No. 41-5, p. 20] On multiple occasions, Saelinger and Stevens had sex on the Patient First premises.

Throughout their relationship, Saelinger repeatedly told Stevens that he was in the process of divorcing his wife. He now admits that those statements were untrue. Saelinger's failure to obtain a divorce was a continuing source of concern for Stevens and that failure ultimately led to the breakup of their relationship in the early fall of 2009.

On October 26, 2009, Stevens sent a letter to Patient First management and Saelinger. In the letter, she expressed concern that she had been feeling "pressured to leave [her] position due to 'personal agendas' and/or perceived threats of legal action" and explained that she was not interested in a position that had recently been offered to her at a different location. [Record No. 1-7] After describing conflicts that had arisen regarding her work schedule, Stevens stated:

> My true desire is to do my job in a non-threatening environment. I wish to continue my work with Dr. Saelinger and our patients in the same professional manner that I have always displayed. . . . I only ask that I be treated as any other employee in a P[atient] F[irst] office; no better and no worse.

[*Id.*] Stevens' letter prompted an investigation into the situation. In December 2009, Stevens was given the option of resigning with benefits or being fired. She rejected the severance package that was offered to her — which would have required her to release any legal claims

against the defendants in this case — and was terminated effective December 18, 2009. The reasons given for her dismissal were disruptive behavior at the workplace and having sex on the premises.

Stevens filed this lawsuit in February 2010, alleging sexual harassment, gender discrimination, and retaliatory discharge in violation of Title VII of the Civil Rights Act of 1964 and the Kentucky Civil Rights Act ("KCRA"), as well as state-law claims of fraud and intentional infliction of emotional distress. [*See* Record No. 1] The Court previously dismissed Count I of the Complaint, which alleged antitrust violations, for failure to state a claim. [*See* Record No. 25] Saelinger now seeks summary judgment with respect to each remaining count, while Stevens has moved for partial summary judgment on her claim of fraud.

## II.   ANALYSIS

Summary judgment is required when the moving party shows, using evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see* (c)(1). In deciding whether to grant summary judgment, the Court views all the facts and inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To avoid summary judgment, the nonmoving party must establish the existence of a genuine issue of material fact as to each essential element of its case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party must do more than cast some "metaphysical doubt" on the material facts. *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002) (citing *Matsushita*, 475 U.S. at 586). Instead, she must present significant

probative evidence of a genuine dispute in order to defeat the motion for summary judgment. *Id.*

### A. Sexual Harassment, Retaliatory Discharge, and Gender Discrimination

Saelinger first argues that he is entitled to summary judgment on Stevens' Title VII and KCRA claims because he is not a proper party. [*See* Record No. 41-1, pp. 10-13] In response, Stevens contends that the law regarding individual liability for such claims "is far from settled." [Record No. 58, p. 20] She maintains that summary judgment should be denied so that she can pursue "additional discovery through which sufficient allegations from which an appropriate cause of action may be discerned." [*Id.*, p. 24; *see also id.*, p. 19 ("Plaintiff submits Defendant's [m]otion has failed on its face, as she has not yet been afforded sufficient discovery . . . .")] As Saelinger notes, however, the proper means of seeking additional discovery to oppose summary judgment is an affidavit under Federal Rule of Civil Procedure 56(d) (formerly Rule 56(f)). [*See* Record No. 64, p. 2] Because Stevens has filed no such affidavit, the Court rejects her contention that additional discovery is necessary.[1]

#### 1. Title VII and KCRA Harassment and Discrimination Claims

The Court is likewise unpersuaded that Saelinger fits the definition of an "employer" under Title VII or the KCRA, as Stevens insists. Pursuant to each of those statutes, it is "an

---

1  The Court further notes that this strategy — *i.e.*, file suit first, worry about the sufficiency of the allegations later — seems to be a hallmark of Stevens' former counsel, Eric Deters, who drafted the complaint and summary judgment response in this matter. *Cf. Deters v. Davis*, No. 3:11-02-DCR, 2011 U.S. Dist. LEXIS 63340, at *14 (E.D. Ky. June 13, 2011) ("Deters appears to believe that he can file any suit against any person, and only later conduct the required research and, if necessary, amend to bring his claims in compliance with the law.").

unlawful employment practice for an employer: (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a); *see* Ky. Rev. Stat. § 344.040(1) (substantively identical).  Title VII defines an employer as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." 42 U.S.C. § 2000e(b). Meanwhile, the KCRA provides that an employer is "a person who has eight (8) or more employees within the state in each of twenty (20) or more calendar weeks in the current or preceding calendar year and an agent of such a person." Ky. Rev. Stat. § 344.040(2).  The Sixth Circuit has held that "despite the express use of the word 'agent' in the statute, Title VII does not create individual liability for individuals in supervisory positions." *Akers v. Alvey*, 338 F.3d 491, 500 (6th Cir. 2003) (citing *Wathen v. Gen. Electric Co.*, 115 F.3d 400 (6th Cir. 1997)).  With one notable exception which is discussed below, the KCRA is interpreted in consonance with Title VII. *Ky. Dep't of Corr. v. McCullough*, 123 S.W.3d 130, 138 (Ky. 2003) (citing *Meyers v. Chapman Printing Co.*, 840 S.W.2d 814, 817 (Ky. 1992)).  Thus, as a general rule, individual supervisors are not subject to liability under either Title VII or the KCRA. *Morris v. Oldham Cnty. Fiscal Court*, 201 F.3d 784, 794 (6th Cir. 2000) (citing *Wathen*, 115 F.3d at 405).

Nevertheless, Stevens argues that Saelinger "must be declared an employer" because he was "specifically named" in the release section of the severance agreement she refused to sign. [Record No. 58, p. 20] That release would have barred Stevens from suing PAL and SEMC, as

well as "each of PAL's and SEMC's sponsors, board members, officers, agents, representatives, successors and assigns, [and] employees, including but not limited to Donald Saelinger, M.D." [Record No. 1-37, p. 2 ¶ 7] The Court does not find Saelinger's specific inclusion in the release significant. In light of the circumstances surrounding her departure, the likelihood that Stevens would sue Saelinger in particular — and thus also the desire to secure a release of claims against him — would have been substantial. Moreover, by referring generally to PAL and SEMC "employees," the release would have protected not only Saelinger, but also, for example, Stevens' fellow nurses. [*Id.*] Finally, the severance agreement identifies Stevens as an employee of PAL, not of Saelinger. [*See id.*, p. 1] In short, nothing in the language of the release indicates that Saelinger was Stevens' employer for purposes of the federal and state civil rights acts.

In addition to the release, Stevens offers various statements by Saelinger as proof that he "operated in a supervisory capacity over" her.[2] [Record No. 58, p. 23] But the relevant question is whether Saelinger was Stevens' employer, not whether he was her supervisor. The latter is not enough in this circuit to subject Saelinger to liability. *See Akers*, 338 F.3d at 500. In any event, Stevens has shown that, at most, Saelinger was *her* supervisor. To qualify as an employer under the KCRA, a person must have at least eight employees, *see* Ky. Rev. Stat. § 344.030(2); under Title VII, the minimum is fifteen. *See* 42 U.S.C. § 2000e(b). Because Stevens has not shown that Saelinger was her employer as that term is defined in the statute, her Title VII claims

---

2   For example, Stevens cites an e-mail in which Saelinger told her, "I totally appreciate the kind and wonderful work that you do on my behalf and on behalf of our patients and of Patient First." [Record No. 58, p. 23] She also emphasizes that Saelinger made references to his position as "the leadership of the organization" and "the guy in the corner office." [*Id.*]

against him fail.  *See Akers*, 338 F.3d at 500; *Morris*, 201 F.3d at 788 n.1.  Her claims of gender discrimination and sexual harassment under the KCRA are likewise foreclosed.  *See* Ky. Rev. Stat. § 344.040(1); *Morris*, 201 F.3d at 793-94.

### 2. Retaliation Under the KCRA

Although Saelinger escapes state-law liability for gender discrimination and sexual harassment because he is not an "employer," the Kentucky retaliation statute is not limited to actions taken by employers.  Rather, because it prohibits retaliatory acts by "a person," the statute "plainly permits the imposition of liability on individuals."  *Morris*, 201 F.3d at 794; *see* Ky. Rev. Stat. § 344.280.  Nevertheless, Stevens' retaliation claim fails because she has not made the necessary prima facie  showing.

To establish a prima facie case under either Title VII or the KCRA, a plaintiff alleging retaliation must show that: (1) she "engaged in an activity protected by Title VII"; (2) her "exercise of [her] civil rights was known by the defendant"; (3) "thereafter, the defendant took an employment action adverse to the plaintiff"; and (4) "there was a causal connection between the protected activity and the adverse employment action."  *Brooks v. Lexington-Fayette Urban Cnty. Hous. Auth.*, 132 S.W.3d 790, 803 (Ky. 2004) (internal quotation marks omitted).  If the prima facie elements are met, the burden shifts to the defendant, which must "articulate a nondiscriminatory reason for its actions"; the plaintiff would then have an opportunity to demonstrate that the stated reason is pretextual.  *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 526 (6th Cir. 2008).  If, however, the plaintiff fails to establish a dispute of material fact with

respect to any one of the prima facie elements, summary judgment is appropriate. *Mulhall v. Ashcroft*, 287 F.3d 543, 551 (6th Cir. 2002).

Stevens maintains that she has satisfied the elements of a prima facie retaliation claim because she sent the October 26 letter to the Patient First management team — including Saelinger — "expressing her job concerns and the hostile work environment she was enduring" and was fired less than two months later.[3] [Record No. 58, p. 27] As evidence of causation, she simply points to the chronology of the two events, asserting that "there was a causal connection between the protected activity and the adverse employment action, namely, termination in less than 2 months from expressing her concerns to her management team." [*Id.*]

Temporal proximity alone may establish causation in a retaliation case. *See Mickey*, 516 F.3d at 525. However, it suffices only in the "limited number of cases . . . where an employer fires an employee *immediately* after learning of a protected activity." *Id.* (emphasis added); *see also DiCarlo v. Potter*, 358 F.3d 408, 421 (6th Cir. 2004) ("[The Sixth] Circuit has embraced the premise that in certain distinct cases where the temporal proximity between the protected activity and the adverse employment action is acutely near in time, that close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise."). Here, Stevens' termination cannot be described as "immediate". Nearly two months passed between her complaint and her firing. *Cf. Mickey*, 516 F.3d at 525 (employee fired same day employer learned of EEOC claim). Without additional evidence of retaliatory intent, Stevens cannot establish the necessary causal connection. *See id.* at 525-26. And as Saelinger observes, nothing

---

3   The Court notes that, like most of Stevens' arguments opposing summary judgment, her contention that the October 26 letter constituted "protected activity" was not raised in the Complaint.

in the record suggests that he was personally responsible for terminating Stevens, much less that he fired her in retaliation for the letter she sent.[4]  [*See* Record No. 41-1, pp. 12-13; Record No. 64, pp. 4-5]  Thus, the KCRA retaliation claim against him also fails.

### B.    Intentional Infliction of Emotional Distress

Count IV of Stevens' Complaint alleged that the "[d]efendants['] actions in firing Plaintiff and publicizing their firing" amounted to intentional infliction of emotional distress. [Record No. 1, p. 23 ¶ 162]  In her summary judgment response with respect to this claim, however, Stevens mentions only Saelinger's "lies and deceptions, and his complete inability to either acknowledge or accept responsibility." [Record No. 58, p. 46; *see id.*, pp. 46-49 (outlining various statements made by Saelinger to Stevens)]  As indicated in the previous section, Saelinger does not appear to have been involved in firing Stevens.  Nor has Stevens shown that Saelinger "publiciz[ed]" her termination.  [Record No. 1, p. 23 ¶ 162] In short, Stevens has presented no evidence to support the claim set forth in her Complaint, and she cannot assert a new claim now.[5]  *See Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 328 (6th Cir. 2006)

---

4       In support of her assertion that Saelinger "took adverse employment against [her], namely termination" [Record No. 58, p. 27], Stevens cites Exhibit 4 to the Complaint — her termination letter, signed by Patient First Chief Operating Officer Ken Folz — and a paragraph of the Complaint itself. [*See id.*, n.150; *see also* Record No. 1-6]

5       Even if Stevens' current claim had actually been alleged, it would not survive summary judgment. Under Kentucky law, intentional infliction of emotional distress consists of four elements: "1) the wrongdoer's conduct must be intentional or reckless; 2) the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality; 3) there must be a causal connection between the wrongdoer's conduct and the emotional distress; and 4) the emotional distress must be severe." *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 788 (Ky. 2004).  Stevens has not addressed the issue of Saelinger's intent or the severity of her alleged emotional distress.  Nor has she addressed the ample Kentucky law suggesting that dishonesty concerning one's divorce is not sufficiently "outrageous" to support a cause of action for intentional infliction of emotional distress. *See Stringer*, 151 S.W.3d at 790-91. Instead, she provides a laundry list of Saelinger's lies, then declares that she has "clearly establish[ed]" the requisite elements. [Record No. 58, p. 49]  The Court is unconvinced.

("The appropriate method for adding new factual allegations to a complaint is . . . by filing an amended complaint."); *Tucker v. Union of Needletrades, Indus., & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005) ("A non-moving party plaintiff may not raise a new legal claim for the first time in response to the opposing party's summary judgment motion." (internal quotation marks omitted)).

### C. Fraud

Finally, the Court turns to Stevens' fraud claim. Both she and Saelinger seek summary judgment on this count. [Record Nos. 41, 60] To establish fraud under Kentucky law, Stevens must show, by clear and convincing evidence: (1) that Saelinger made a material representation to her; (2) that the representation was false; (3) that Saelinger knew it to be false or made it recklessly; (4) that he induced her to act upon his misrepresentation; (5) that she relied upon the misrepresentation; and (6) that the misrepresentation caused her injury. *See Flegles, Inc. v. TruServ Corp.*, 289 S.W.3d 544, 549 (Ky. 2009) (citing *United Parcel Serv. Co. v. Rickert*, 996 S.W.2d 464 (Ky. 1999)). Stevens' reliance on the misrepresentation must have been reasonable. *See id.* Furthermore, she must have suffered a pecuniary loss as a result of the alleged fraud. *See Stahl v. St. Elizabeth Med. Ctr.*, 948 S.W.2d 419, 423 (Ky. App. 1997).

Stevens did not allege any pecuniary harm. Instead, Count III of the Complaint merely asserted that "acting in reliance on [Saelinger's] material representations caused [her] severe emotional injury." [Record No. 1, p. 23 ¶ 158] Nor did she attempt to show, until her reply in support of her own motion for partial summary judgment on this count, that any pecuniary loss

had resulted from the alleged fraud.[6]  Now, however, she claims that "[a]s a direct result" of Saelinger's misrepresentations, "[she] and Saelinger engaged in conduct — a relationship — that he knew was inappropriate in an employment context," and "[a]s a result of this conduct," she was terminated, thereby suffering economic loss.  [Record No. 71, p. 4; *see also id.*, p. 2 ("Saelinger's misrepresentations led inexorably to the plaintiff's termination. . . . They in fact induced her conduct, which, in turn, was the articulated cause of her termination.")]  The Court is neither obligated nor inclined to consider such belated allegations.  *See Harvey*, 453 F.3d at 328; *Tucker*, 407 F.3d at 788.  Because Stevens did not allege or offer proof of pecuniary harm, her fraud claim cannot succeed.

### III.    CONCLUSION

Stevens has failed to demonstrate a genuine dispute of material fact with respect to any of her claims against Saelinger.  Accordingly, it is hereby

**ORDERED** as follows:

(1)    Defendant Donald Saelinger, M.D.'s Motion for Summary Judgment [Record No. 41] is **GRANTED**.  The remaining claims against Saelinger (Counts II, III, IV, V, and VI of the Complaint) are **DISMISSED**, with prejudice.

(2)    Plaintiff Caroline D. Stevens' Motion for Partial Summary Judgment Against Dr. Saelinger [Record No. 60]  is **DENIED**.

---

6    Stevens inexplicably asserts in her reply that "Saelinger concedes the plaintiff alleges she suffered pecuniary harm." [Record No. 71, p. 4]  In fact, Saelinger argued in both his original memorandum and his reply that Stevens had failed to allege or prove any pecuniary loss in connection with her fraud claim. [*See* Record No. 41-1, p. 19; Record No. 64, p. 5]

This 20th day of September, 2011.



Signed By:
*Danny C. Reeves* DCR
United States District Judge