UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | | |
|---|---|---|
| CAROLINE D. STEVENS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2: 10-20-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| SAINT ELIZABETH MEDICAL CENTER, INC., et al., | ) ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendants. | ) | |

*** *** *** ***

This matter is pending for consideration of the motion for summary judgment filed by Defendants Saint Elizabeth Medical Center, Inc. ("SEMC"), Physician Associates, LLC ("PAL"), and Patient First Physician Group ("Patient First"). [Record No. 75] The defendants argue that there are no material issues of fact in dispute with respect to Plaintiff Caroline D. Stevens' remaining claims of sexual harassment, retaliation, gender discrimination, and intentional infliction of emotional distress. Further, they assert that they are entitled to judgment as a matter of law regarding these claims. Having considered the parties' respective positions, the Court will grant the defendants' motion.

### I.   BACKGROUND

Stevens is a registered nurse who was previously employed by SEMC, PAL, and Patient First. During her employment, she worked for Defendant Donald Saelinger, M.D., both as a nurse and as his personal assistant. Stevens and Saelinger became romantically and sexually

involved in mid-2007; Saelinger was married at the time. Stevens admits that she discussed the relationship with other employees, patients, and drug company representatives. She further acknowledges that she and Saelinger had sex on the Patient First premises several times.

Throughout their relationship, Saelinger repeatedly told Stevens that he was in the process of divorcing his wife. He later admitted, however, that those statements were untrue. Saelinger's failure to obtain a divorce was a continuing source of concern for Stevens and ultimately led to the breakup of their relationship in late summer or early fall of 2009. When Stevens learned that Saelinger had been dishonest about the status of his marriage, she began telling other Patient First employees that the relationship was over. According to Stevens, Saelinger continued to pursue her, sending romantic text messages and attempting to touch her. As a result, she sometimes avoided him at the office.

On October 26, 2009, Stevens sent a letter to Patient First management. In it, she expressed concern that she had been feeling "pressured to leave [her] position due to 'personal agendas' and/or perceived threats of legal action." [Record No. 1-7] Stevens also explained that she was no longer interested in a diabetes-education position at a different location, which had recently been "presented to [her] . . . [as] the only option to continue [her] full-time status." [*Id.*] After describing conflicts that had arisen regarding her work schedule, Stevens stated:

> My true desire is to do my job in a non-threatening environment. I wish to continue my work with Dr. Saelinger and our patients in the same professional manner that I have always displayed. . . . I only ask that I be treated as any other employee in a P[atient] F[irst] office; no better and no worse.

[*Id.*]

Stevens' letter prompted Patient First management to hire an outside attorney to investigate the situation. In December 2009, Stevens was given the option of resigning with benefits or being fired. She rejected the severance package that was offered to her and was terminated effective December 18, 2009. The reasons given for her dismissal were disruptive workplace behavior and having sex on the premises. Saelinger was terminated on December 3, 2009, also for having sex at the office.

Stevens filed this lawsuit in February 2010, alleging sexual harassment, gender discrimination, and retaliatory discharge in violation of Title VII of the Civil Rights Act of 1964 and the Kentucky Civil Rights Act (KCRA), as well as state-law claims of fraud and intentional infliction of emotional distress. [*See* Record No. 1] The Court previously dismissed Count I of the Complaint, which alleged antitrust violations, for failure to state a claim. [Record No. 25] In addition, the Court granted summary judgment in Saelinger's favor with respect to each count against him. [Record No. 72] Patient First, SEMC, and PAL now seek summary judgment on all remaining counts.

## II. ANALYSIS

Summary judgment is required when the moving party shows, using evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see* (c)(1). In deciding whether to grant summary judgment, the Court views all the facts and inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To avoid summary judgment, the nonmoving party must establish

the existence of a genuine issue of material fact as to each essential element of her case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party must do more than cast some "metaphysical doubt" on the material facts. *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002) (citing *Matsushita*, 475 U.S. at 586). Instead, she must present significant probative evidence of a genuine dispute in order to defeat the motion for summary judgment. *Id.* With this standard in mind, the Court turns to Stevens' remaining claims.

### A. Sexual Harassment (Hostile Work Environment)

A plaintiff who alleges sexual harassment based on a hostile work environment must make a prima facie showing "that '(1) she is a member of a protected class (female); (2) she was subjected to harassment, either through words or actions, based on sex; (3) the harassment had the effect of unreasonably interfering with her work performance and creating an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer.'" *Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 270 (6th Cir. 2009) (quoting *Grace v. USCAR*, 521 F.3d 655, 678 (6th Cir. 2008)). To create an objectively hostile environment, the harassment must be "subjectively severe and pervasive." *Id.* at 274.

The defendants maintain that the relationship between Saelinger and Stevens was consensual at all times relevant to this action and that Saelinger's behavior did not constitute sexual harassment. [*See* Record No. 75, pp. 7-9] Viewing the evidence in the light most favorable to Stevens, however, the Court must assume that Saelinger's advances became

unwelcome at some point. Thus, for present purposes, the first two elements are satisfied for purposes of considering the motion for summary judgment.

Stevens' sexual-harassment claim collapses, however, on the third element, which is not addressed in her response to the present motion. In an affidavit attached to her response, Stevens describes Saelinger's text messages, as well as "his conduct in the office," as "distressing" and states that she "took to hiding occasionally in the bathroom and empty patient rooms, or leaving the building before him to avoid any unnecessary physical contact." [Record No. 88-1, p. 3 ¶ 8] The affidavit quotes Saelinger's "distressing" text messages.

> One, dated September 6, 2009, implored: "Hello dear [D]enise, silly lady, No there will never be another soulmate. I found one and her name is [D]enise." Another followed on September 8, "Are you there Denise?" And another on the same day, "Can I call you this afternoon following your hair appointment." And another on September 12, "Denise probably need to meet." Finally another on October 2: "Denise, I am in love with you so big. I want to live the rest of my life with you. What is wrong. Please say we can meet for church tomorrow."

[*Id.*, pp. 2-3 ¶ 7]

While the Court recognizes that these messages may have been unwelcome and even upsetting to Stevens, they clearly did not create an environment that a reasonable person would find objectively hostile. *Cf. Gallagher*, 567 F.3d at 274 (finding objectively hostile environment where office described by plaintiff was "permeated with vulgar language, demeaning conversations and images, and palpable anti-female animus"). Moreover, Stevens' own statements — that she found the messages and Saelinger's unspecified "conduct in the office" "distressing" and "occasionally" felt the need to avoid Saelinger — indicate that she did not even

suffer subjectively severe and pervasive harassment.[1]  [Record No. 88-1, p. 3 ¶ 8]  Because Stevens has not established a prima facie case of sexual harassment, this claim cannot survive summary judgment.

### B. Retaliation

To establish a prima facie case under either Title VII or the KCRA, a plaintiff alleging retaliation must show that: (1) she "engaged in an activity protected by Title VII"; (2) her "exercise of [her] civil rights was known by the defendant"; (3) "thereafter, the defendant took an employment action adverse to the plaintiff"; and (4) "there was a causal connection between the protected activity and the adverse employment action." *Brooks v. Lexington-Fayette Urban Cnty. Hous. Auth.*, 132 S.W.3d 790, 803 (Ky. 2004) (internal quotation marks omitted).  An adverse employment action is one that "work[s] a 'materially adverse change in the terms and conditions of [the plaintiff's] employment.'" *McMillian v. Potter*, 130 F. App'x 793, 796 (6th Cir. 2005) (quoting *Hollins v. Atl. Co.*, 188 F.3d 652, 662 (6th Cir. 1999)).  The Sixth Circuit has explained that "'[a] materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.'" *Tepper v. Potter*, 505 F.3d 508, 515 (6th Cir. 2007) (quoting *Ford v. GMC*, 305 F.3d 545, 553 (6th Cir. 2002)).

---

[1] Even in her Complaint, Stevens provided no factual basis for her sexual-harassment claim. Instead, she merely asserted that "after the consensual relationship ended, Dr. Saelinger sexually harassed Plaintiff by creating a hostile work environment."  [Record No. 1, p. 20 ¶ 136]

Previously, Stevens based her retaliation claim on the letter she sent October 26, 2009, "expressing her job concerns and the hostile work environment she was enduring." [Record No. 58, p. 27; *see also* Record No. 1 (Complaint), p. 7 ¶ 42 ("Defendants retaliated against Plaintiff for [the October 26] letter.")]  However, she now maintains that she suffered retaliation after complaining to site manager Gary Brown in late September that she was concerned about the future of her job. [*See* Record No. 88, pp. 14-15]  Stevens contends that "[w]ithin days" after this complaint, Patient First management devised a plan to force her to quit. [*Id.*]  The temporal proximity between her complaint and the "plan," Stevens argues, is enough to satisfy the causation element of her retaliation claim. [*See id.*, pp. 15-16]

There are several problems with Stevens' new argument.  First, she does not explain how either complaint represents protected activity — she was complaining about being pressured by other employees to change her schedule, not about sexual harassment by Saelinger.  Second, the alleged plan to get her to quit does not, in itself, constitute adverse employment action.  She experienced no "materially adverse change" in her employment as a result of the plan. *McMillian*, 130 F. App'x at 796.  Finally, even if her complaints were deemed to arise out of Saelinger's unwanted advances and termination of her employment were the adverse employment action, the evidence would not support a causal connection between the two, since Saelinger himself was fired before she was.  In short, Stevens has failed to establish a prima facie case of retaliation, and summary judgment is appropriate.

     **C.**     **Gender Discrimination**

Stevens did not respond to the defendants' argument regarding her claims of gender discrimination. Thus, it appears that she does not to oppose the defendants' motion with respect to Count VI of her Complaint, the substance of which is that "Defendants discriminated against her based upon her gender, as a fema[le]." [Record No. 1, p. 25 ¶ 165] In any event, the defendants have demonstrated that they are entitled to summary judgment on this count. A plaintiff who alleges gender discrimination must make a prima facie showing that: "'(1) she is a member of a protected group; (2) she was subjected to an adverse employment decision; (3) she was qualified for the position, and (4) she was replaced by a person outside the protected class, or similarly situated non-protected employees were treated more favorably.'" *Vincent v. Brewer Co.*, 514 F.3d 489, 494 (6th Cir. 2007) (quoting *Peltier v. United States*, 388 F.3d 984, 987 (6th Cir. 2004)); *see Gragg v. Somerset Technical Coll.*, 373 F.3d 763, 767 n.1 (6th Cir. 2004) (noting that KCRA discrimination provisions are to be interpreted in consonance with those of Title VII). As the defendants point out, Stevens cannot satisfy the fourth element because the undisputed evidence shows that Saelinger was also fired for having sex at the office. In other words, Stevens cannot establish that a similarly situated non-protected employee received better treatment. *Cf. Vincent*, 514 F.3d at 494. Her claims of gender discrimination therefore fail.

### D.    Intentional Infliction of Emotional Distress

Stevens likewise failed to address intentional infliction of emotional distress in her response. Again, however, the defendants have adequately established that she could not prevail on this claim. Under Kentucky law, intentional infliction of emotional distress ("IIED") consists

of four elements: "1) the wrongdoer's conduct must be intentional or reckless; 2) the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality; 3) there must be a causal connection between the wrongdoer's conduct and the emotional distress; and 4) the emotional distress must be severe." *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 788 (Ky. 2004).  Here, Stevens alleged that the "[d]efendants['] actions in firing [her] and publicizing their firing" amounted to intentional infliction of emotional distress.  [Record No. 1, p. 23 ¶ 162]  Yet, it is well established that "mere termination of employment and the resulting embarrassment do not rise to the level of outrageous conduct and resulting severe emotional distress necessary to support a claim for IIED." *Miracle v. Bell Cnty. Emergency Med. Servs.*, 237 S.W.3d 555, 560 (Ky. App. 2007); *see also Stringer*, 151 S.W.3d at 791; *Benningfield v. Pettit Envtl., Inc.*, 183 S.W.3d 567, 572 (Ky. App. 2005).  Furthermore, Stevens has presented no evidence to support her allegation that the defendants publicized her firing.  Because at least two elements of her IIED claim are lacking, *see Stringer*, 151 S.W.3d at 788, summary judgment is appropriate regarding this claim.

### III.    CONCLUSION

Stevens has not demonstrated that a genuine issue of material fact exists with respect to her remaining claims.  Further, the defendants are entitled to judgment as a matter of law.  Accordingly, it is hereby

**ORDERED** as follows:

(1)    The Motion and Memorandum in Support of Summary Judgment of Patient First Physician Group, Physician Associates, LLC, and St. Elizabeth Medical Center, Inc. [Record No.

75] is **GRANTED**. All remaining claims against these defendants are **DISMISSED**, with prejudice.

(2) Plaintiff Caroline D. Stevens' pending Motion *in Limine* [Record No. 76] and the defendants' Motion to Strike [Record No. 97] are **DENIED** as moot.

(3) The pretrial conference currently set for Monday, February 6, 2012, is **CANCELED**.

(4) All claims in this matter having been resolved, the action is **DISMISSED** and **STRICKEN** from the Court's docket. A final and appealable judgment will be entered this date.

This 1st day of February, 2012.

Signed By:
*Danny C. Reeves*  DCR
United States District Judge